*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. K. KRIVANEK, Minor.

UNPUBLISHED
September 14, 2023

No. 364448
Cass Circuit Court
Family Division
LC No. 21-000134-NA

Before: SWARTZLE, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to the minor child under MCL 712A.19b(3)(a), (3)(g), and (3)(j). Respondent argues that the trial court erred by determining that reasonable efforts were made to accommodate respondent's mental-health disability.[1] For reasons stated herein, we affirm.

## BACKGROUND

In this case, one-year old LK was removed from respondent's care in December 2011 when his father burned LK's arm accidentally with a cigarette and the parents failed to seek treatment; when police arrived to investigate and LK's paternal grandmother expressed her plan to obtain custody of LK, respondent assaulted LK's grandmother. The Department of Health and Human Services (DHHS) Child Protective Services became involved and discovered both parents were

---

[1] Respondent does not challenge the statutory grounds for termination or the best-interest grounds for termination. As such, we may presume that the trial court did not clearly err by finding that the unchallenged statutory grounds were established by clear and convincing evidence or that the unchallenged findings that termination was in the child's best interests by a preponderance of the evidence. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000). Regardless, having reviewed the record, we conclude that the trial court did not clearly err by finding at least one statutory basis for termination, MCL 712A.19b(3)(a)(ii), was established by clear and convincing evidence and that termination was in the child's best interests. *In re Trejo*, 462 Mich at 355-357.

-1-

actively using drugs. Respondent's treatment plan included participation with the Family Drug Treatment Court as well as a preservation and prevention program to address mental health and substance abuse assessments but respondent moved to Indiana and would not participate in either program or regular drug screens. When she did test, respondent was positive for methamphetamine and amphetamine.

DHHS was aware that respondent had substance-abuse and mental-health issues during their early intervention. Respondent's psychological and substance use assessment had to be rescheduled due to respondent's failure to initially appear. Dr. Randall E. Haugen issued a March 9, 2022 Psychological and Substance Abuse Evaluation diagnosing respondent with the following: stimulant use disorder, moderate to severe (methamphetamine); child neglect; child psychological abuse; major depression, moderate; other specified trauma and stressor-related disorder; personality disorder with mixed features with narcissistic and histrionic pattern. Dr. Haugen's report noted that her "overall prognosis is poor" given that her issues were "fairly long term and characterological in nature" and her issues with addiction were longstanding.

DHHS referred respondent to engage in several services to address both mental health and substance abuse issues including authorizing inpatient treatment at Action House, Carol's Hope, Sacred Heart, Gilmore Center, Star of Hope, Oaklawn in Indiana, and Community Healing Center. The Family Drug Treatment Court, conducted by the same judge who presided over the child protective proceeding, also encouraged respondent to successfully complete her treatment with Freedom Recovery Center and Woodlands. Unfortunately, respondent failed to successfully complete any of these programs due to "violent behaviors," dishonesties, continued drug use, failure to communicate with case managers, refusal to follow program rules, and failure to participate in required services. Respondent was also provided individual therapy, intensive case management, and drug screens. Despite DHHS' efforts and the trial court's drug treatment court oversight, respondent did not follow through with detoxification and treatment programs that could assist and stabilize both her mental health and substance abuse issues.

Respondent argues that the March 2022 psychological report recommended "initial stabilization" as being important and it noted that mood stabilizers may be considered before she should attend and complete outpatient substance abuse treatment. Because DHHS did not follow the step by step recommendations in the psychological report and stabilize respondent before sending her to substance abuse treatment, respondent argues that DHHS failed to exercise reasonable efforts to reunify her with her son. Respondent further argues that DHHS did not accommodate her "disability" of having depression and a personality disorder along with co-occurring substance use disorder as required in *In re Hicks/Brown*, 500 Mich 79, 86; 893 NW2d 637 (2017). We disagree.

## REASONABLE EFFORTS

The issue of whether the petitioner made reasonable efforts to preserve and reunify the family is reviewed for clear error. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). If the issue on appeal is not preserved, this Court's review is limited to plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008); see also *People v*

*Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).[2] "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9. Finally, reversal under plain-error review "is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant *or* when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted).

Here, we find no plain error affecting substantial rights because respondent failed to avail herself of the numerous inpatient treatment programs DHHS referred her to for her mental health and substance abuse issues and she never requested accommodations for an alleged disability, i.e., her co-occurring diagnoses. *In re Hicks/Brown*, 500 Mich at 87; *In re VanDalen*, 293 Mich App at 135.

Generally, "when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App at 542, citing MCL 712A.18f(1), (2), and (4). A trial court

> is not required to order the agency to initiate proceedings to terminate parental rights if . . . [t]he state has not provided the child's family . . . with the services the state considers necessary for the child's safe return to his or her home, if reasonable efforts are required. [MCL 712A.19a(6)(c).]

Although DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Respondent argues in her brief on appeal that reasonable accommodations of a parent's disability are required in child protective proceedings. *In re Hicks/Brown*, 500 Mich at 86. And due to her mental health diagnoses and co-occurring substance abuse issues, respondent claims she was entitled to have her disabilities accommodated. "Title II of the ADA [Americans with Disabilities Act] requires that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " *Id*. at 86, quoting 42 USC 12132. Notably, the ADA defines an "individual with a disability means a person who has a disability. The term individual with a disability does not include an individual who is

---

[2] Although this Court has recently held that "the plain-error rule of *Carines* does not apply to civil cases," *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ____ (2023) (Docket No. 359090); slip op at 5, this Court determined that termination-of-parental-right cases present different constitutional considerations than traditional cases. See *id*. at ___; slip op at 5 n 3.

currently engaging in the illegal use of drugs, when the public entity acts on the basis of such use." 28 CFR 35.104.

We note at the outset that respondent failed to request reasonable accommodations and did not raise or request ADA services in the trial court. Therefore, our review is limited to plain error affecting substantial rights. *In re Frey,* 297 Mich App at 247; *In re Uterea*, 281 Mich App at 8. "Under Michigan's Probate Code, the [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich at 85. Reasonable efforts mean that DHHS must "modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *Id.* at 86. DHHS "cannot accommodate a disability of which it is unaware." *Id.* at 87. Thus, respondent needs to inform DHHS of the disability and the need for an accommodation. *Id.* Moreover, when challenging the services offered, a respondent must establish that he or she would have fared better if other services had been offered. *In re Sanborn*, 337 Mich App 252, 264; 976 NW2d 44 (2021).

Respondent cites no cases establishing that co-occurring mental health and substance abuse diagnoses constitute a disability under the ADA. And the fact that the psychological report asserts that respondent should be stabilized by establishing "housing, a source of income and develop a healthy external support network" in addition to seeking "psychopharmacological intervention" first does not mean that DHHS must help respondent achieve all those goals *before* referring respondent for substance abuse treatment.[3] It is equally valid to address mental health issues after steps are made towards sobriety. Carla Lowe, the mental health and substance abuse therapist at Woodlands, one of the Family Drug Treatment Court programs, testified that she worked with respondent when she relapsed at the sober living home. Lowe testified that they "focused exclusively on getting [respondent] into detox and making sure that she could establish a foundation in recovery. It's very difficult to—to discuss other mental health issues and things like that until there is a foundation in recovery."[4] Lowe also planned on referring respondent to the Woodlands' dialectical behavior therapy program based upon respondent's personality disorder diagnosis and symptoms after respondent completed a detoxification facility. Respondent's

---

[3] Notably, respondent did not identify any service that she believed would have benefited her more than the services that were provided. See *In re Sanborn*, 337 Mich App at 265. Respondent merely listed the results of her psychological evaluation and diagnosis and the recommendations of the treatment provider to argue that the services offered by DHHS were insufficient. *See id.* at 265-266. Further, even if respondent had been seeking treatment for her mental health, respondent was unable to provide any drug screens, any improvement with her living environment, or proof of any attempts to communicate with the child. Respondent fails to establish that she would have fared better if additional services had been offered. See *In re Fried*, 266 Mich App at 542-543.

[4] In its bench opinion, the trial court agreed: "as long as you continue to use, that use further damages your brain and then it creates a situation where it's difficult for your mental health issues to be addressed, as you heard from Carla Lowe today. That's why we always try to detox people and then start focusing on the cooccurring issues because you can't make headway on any mental issues until we have a period of sobriety."

refusal to complete a program and her decision to move to her father's home in Indiana made ongoing referrals impossible.

Respondent's argument provides conclusory statements about the services that were offered and how those services did not accommodate her mental-health disability. See *In re Sanborn*, 337 Mich App at 265. Respondent did not provide any argument on how the services were deficient or how they were unreasonable. See *id*. Respondent disappeared from state supervision for over six months until she appeared at the termination hearing. Respondent knew that the termination hearing would determine whether she was able to retain her rights to her child. Respondent claimed that she had been obtaining treatment on her own to address her mental health, but respondent did not present any witnesses who could corroborate her treatment regimen or any evidence that would show that respondent's avoidance of the case service plan with DHHS and her decision to seek treatment on her own had made a difference in her progress.

Also, unlike the respondent in *Hicks/Brown*, respondent did not object to the case service plans DHHS provided or the programs that they offered to respondent. *In re Hicks/Brown*, 500 Mich at 87. DHHS made efforts to address both respondent's mental health and drug addiction. Evidence was presented that respondent had genetic DNA testing to determine what medications would be appropriate to treat her mental health issues but then she withdrew herself from the program where she could receive the benefit of those medications.[5] Respondent failed to appear for the majority of the hearings and family drug treatment proceedings. Additionally, respondent attempted some, but failed to complete all, programs DHHS recommended and the family drug treatment court. Eventually, respondent failed to take any action toward the completion of the terms of her case service plan outlined during each hearing and documented for respondent to review after each hearing. Respondent chose to ignore DHHS and failed to comply with the provided service plan. The trial court properly referred to the case service plan and reviewed additional evidence regarding respondent's lack of compliance at each review hearing, and considered testimony from respondent's DHHS case manager, treatment team members of the family drug treatment court, as well as various treatment providers. Unfortunately, the pattern of noncompliance permeated this case. Respondent agreed to participate in a program and would either not report to the agency, show up and discharge herself, or be expelled from each program. This occurred repeatedly all while respondent continued testing positive for methamphetamine in the few tests that she did not refuse to submit.

Despite all DHHS's efforts, respondent would disappear, and no one was able to contact her. DHHS was left to attempt to contact various agencies at which respondent was supposed to seek treatment, hoping to figure out where respondent was located. Indeed, respondent failed in her "commensurate responsibility. . . to participate in the services that [were] offered." *In re Frey*, 297 Mich App at 248.

In summary, despite respondent's refusal to follow through with her parent agency agreement, intensive inpatient treatment, or ongoing contact with her DHHS social service

---

[5] Respondent was taking Wellbutrin at one placement and was prescribed Abilify as a mood stabilizer but without submitting to random drug screening, DHHS was unable to determine whether respondent was taking the medications or continuing to abuse methamphetamines.

specialist, DHHS still continued to offer reasonable efforts through additional resources and make new referrals for respondent. Respondent chose not to engage with any providers including those qualified to address her mental health issues. Additionally, respondent withdrew DHHS's access to information regarding respondent's progress in treatment both in Michigan and Indiana when she revoked or refused to provide any release of information for DHHS. Any alleged error in providing reasonable efforts would not have impacted the outcome of the proceedings. See *In re Utrera*, 281 Mich App at 9. Further, if respondent's mental health is categorized as a disability, respondent failed to show that, had she received a certain type of mental-health treatment that was withheld from her, she would have been better. *In re Sanborn*, 337 Mich App at 266.

Based upon DHHS's referrals to multiple in-patient treatment facilities and therapeutic providers, the Family Drug Treatment Court's interventions, and repeated attempts to establish a foundation in respondent's recovery, we affirm the finding that reasonable efforts were made to provide services aimed to preserve and reunify the family *Id.* at 267; MCL 712A.19a(2). Accordingly, the trial court did not err by determining that reasonable efforts provided to respondent were sufficient and the trial court was able to proceed to termination because DHHS had provided a case service plan that included services the state considered necessary for the child's safe return to her home. MCL 712A.19a(6)(c).

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney